UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA ex rel.,
GREG WESTFALL and SUZANNE
WESTFALL,

        Plaintiffs,

v.

                Case No.  8:06-cv-571-T-33TBM

AXIOM WORLDWIDE, INC., AXIOM
WORLDWIDE, LLC, JAMES J. GIBSON,
JR., NICHOLAS EXARHOS, TIMOTHY
EXARHOS, PEER REVIEW NETWORK,
INC.,

        Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendants
Axiom Worldwide, Inc., Axiom Worldwide, LLC, James J. Gibson,
Jr., and Nicholas Exarhos, DC's Motion to Dismiss (Doc. # 33)
and Motion to Strike (Doc. # 34), both filed on June 10, 2008.
On August 26, 2008, Relators, Greg and Suzanne Westfall, filed
their Consolidated Memorandum in Opposition to Defendants'
Motion to Dismiss and Motion to Strike. (Doc. # 56).  On
October 9, 2008, Defendants filed their Reply Memorandum.
(Doc. # 63).

For the reasons that follow, this Court grants the motion
to dismiss in part and denies the motion to strike without
prejudice.  This Court will allow Relators to file a second

amended complaint, consistent with the following analysis, within ten days of the date of this Order.

## I.  <u>Legal Standard</u>

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff.  <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004).  Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.  <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)(internal citations omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

## II.  __Factual Background__

The following factual allegations are taken from the first amended complaint (Doc. # 25) and are accepted as true for the purpose of deciding Defendants' motion to dismiss.

Defendants Axiom Worldwide, Inc. and Axiom Worldwide, LLC (collectively "Axiom Worldwide") are business entities developed in 2001 by Defendants James Gibson, Nicholas Exarhos, and Timothy Exarhos to "market, promote, and sell DRX spinal decompression devices to healthcare professionals." (__Id.__ at ¶ 11).  The DRX devices are high-tech tables used by physicians to ease the neck and back pain of their patients.

Defendant James Gibson is the President of Axiom Worldwide, and Defendant Nicholas Exarhos is the Vice President of Axiom Worldwide. (__Id.__ at ¶¶ 12-13).  Defendant Timothy Exarhos wears several hats, so to speak; he helped develop the DRX, he is a practicing physician, and he is an independent contractor for Defendant Axiom Worldwide, acting as a trainer for physicians who purchase DRX devices. (__Id.__ at ¶¶ 12-14).  It appears that Defendant Timothy Exarhos, in his capacity as a physician, utilized the DRX tables to treat his

patients, and he submitted claims to Medicare for this treatment. (Id. at ¶ 14).[1]

In addition to the information that Defendant Timothy Exarhos provided to purchasing physicians, Axiom Worldwide partnered with Defendant Peer Review Network to provide information to physicians about the DRX--particularly about how physicians' use of the DRX could be billed to Medicare. As alleged in the first amended complaint, Defendant Peer Review Network "provided billing advice that was subject to being used in a misleading manner and was used by Axiom as a basis for direct trainers and sales staff to represent to its physician customers to bill for services, which were not rendered by the use of the DRX-9000 device." (Id. at ¶ 78).[2]

---

[1] It should be noted that Defendant Timothy Exarhos and Defendant Peer Review Network have not joined in the pending motion to dismiss and have not responded to the allegations in the first amended complaint. From the present record, this Court cannot determine whether Defendant Timothy Exarhos and Defendant Peer Review Network have been served with process pursuant to Rule 4 of the Federal Rules of Civil Procedure.

[2] According to Relators, Defendant Peer Review Network "provide[d] false and fraudulent information and omissions . . . in order to facilitate the filing of false and fraudulent claims to Medicare and other federal healthcare programs so as to promote the sales of the Defendants' DRX-9000 devices." (Id. at ¶ 16).

Axiom Worldwide had a team of employees, and Relator Greg Westfall was a sales representative and sales manager for Axiom Worldwide. (<u>Id.</u> at ¶ 5). Relator Suzanne Westfall served as Greg Westfall's assistant. (<u>Id.</u> at ¶ 6).

After several years of employment with Axiom Worldwide, Relators came to the conclusion that the DRX tables were being sold to physicians under false pretenses. Particularly, Relators claim that Defendants and others acting in concert "did sell and cause to be sold spinal decompression tables known as DRX-9000 tables (and related tables) to various doctors under various false and fraudulent representations when they had knowledge and should have known that such representations were false and fraudulent . . . knowingly causing false and fraudulent claims to be presented to Medicare and other federal healthcare programs officials." (<u>Id.</u> at ¶ 17).

With respect to "false claims" Relators submit, "The services rendered by use of the DRX-9000 table may be submitted to Medicare and other Federal Programs under a CPT [Current Procedural Terminology] code of 97012 which pays only approximately fifteen dollars or less, which is paid for services rendered by a mechanical traction device, or by use

of the CPT code of 97039 that is used for an unlisted modality." (Id. at ¶ 44).

However, Relators indicate that Defendants sold their DRX tables for approximately $90,000, when similar traction tables were available for only $5,000 and that Defendants devised a scheme to convince physicians that they could submit claims "to Medicare and other Federal Program Officials in order for the physicians to obtain higher reimbursements of approximately $156 per patient session, which would justify purchasing Defendants' higher priced DRX-9000 device instead of the lower priced mechanical traction device that would be reimbursed at a rate of approximately $15 or less." (Id. at ¶ 61).

Defendants marketed the DRX tables by advising physicians that the therapies rendered with the DRX tables were covered by Medicare and were FDA approved, that a patent on the DRX table was pending, and that the tables were developed by NASA to be used by astronauts. (Id. at ¶¶ 72, 75, 76).

Relators describe several incidents regarding specific sales of DRX tables to physicians. For instance, Relators assert that, in January of 2005, Defendants sold Dr. Bernard Zelliger, DO, a DRX-9000, and Dr. Zelliger experienced billing problems. (Id. at ¶ 95). In addition, Relators assert that

Defendants sold to Dr. Fowler, DO, PhD, a DRX-9000 in April of 2005, and that "Axiom personnel advised him that the treatment was Medicare reimbursable." (Id. at ¶ 96). Axiom Worldwide's trainer advised Dr. Fowler to bill Medicare under code 97530. (Id.). According to Relators, "Defendants Axiom, Gibson, Tim Exarhos and Nicholas Exarhos knew or should have known that using code 97530 was false and fraudulent, and yet, caused Dr. Fowler to claim code 97530 on claims to Medicare." (Id.).

Relators assert that Defendant, Timothy Exarhos, in his capacity as a physician, submitted ten false claims to the Government, each for $180, for patients he treated from December 6, 2004, through December 17, 2004. (Id. at ¶ 108). In addition, Relators assert that, with respect to the same treatments, Defendant Timothy Exarhos "did knowingly make, use, and cause to be made and used a false record and statement" used for the purpose of getting a false claim paid by the Government. (Id. at ¶ 109).

Relators also allege that Dr. Phil Fisher (not a defendant in this case) submitted "a multitude of false and fraudulent claims for payment and approval" and created false records between 2001 and 2007, under the direction of Defendants. (Id. at ¶¶ 112-113).

Thus, Relator Greg Westfall disclosed the foregoing information to the Government because "he wanted the [G]overnment to stop the Defendants from continuing their fraudulent and false activities." (<u>Id.</u> at ¶ 5).

Thereafter, on April 5, 2006, Relators filed a sealed complaint against Defendants under the False Claims Act, 31 U.S.C. § 3729 (the "FCA"). (Doc. # 1). Relator Greg Westfall asserts that he "is the primary source" of any public disclosure about Defendants' alleged fraud and that he "has direct, personal, and independent knowledge of the substance and essence" of the complaint allegations. (Doc. # 25 at ¶ 5).

On August 3, 2007, the United States filed its notice indicating that it declined to intervene in this suit. (Doc. # 2). On February 19, 2008, Defendant Axiom Worldwide, Inc. filed a motion to dismiss the complaint with prejudice pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. # 15), arguing, among other things, that Axiom Worldwide never submitted any claims to Medicare, or any other Government agency, for reimbursement.

On February 20, 2008, Relators filed a motion to amend the complaint, and on February 29, 2008, the Court granted Relators' request for leave to amend. (Doc. ## 16, 22).

## III. **The First Amended Complaint**

On March 31, 2008, Relators filed the first amended complaint, mooting the initial motion to dismiss the complaint. (Doc. # 27). Relators filed under seal the exhibits to the complaint, which include pages from Defendants' Sales Training Manual (instructing purchasing physicians about the use of the DRX table with patients) and Defendants' customer list. (Doc. # 65).

The first amended complaint is a 49-page dossier of Medicare jargon, including references to Medicare CPT codes, National Coverage Decisions, Advance Benefits Notices, and other specialized healthcare terms. Defendants seek dismissal with prejudice and characterize the complaint as "an unfocused, meandering, and virtually incomprehensible pleading that consists of errant and disjointed allegations." (Doc. # 63 at 3). Unfortunately, there is some truth to Defendants' description of the first amended complaint as "unfocused" and "meandering." Relators' first amended complaint is not organized into counts. Instead, it contains hundreds of FCA "claims" and allegations regarding a civil conspiracy. This makes Relators' complaint hard to follow. Reading the first amended complaint carefully, this Court was not able to connect with any certainty the numerous allegations with the individual Defendants.

However, as will be discussed within this order, this Court determines that the first amended complaint is not subject to dismissal with prejudice, as requested by Defendants. Instead, this Court determines that it is appropriate to dismiss the first amended complaint and to allow Relators to file a second amended complaint containing a more definite statement of each claim as asserted against each individual Defendant.[3]

## A.    Motion to Strike

Defendants filed a motion to strike from the first amended complaint, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, certain allegations that Defendants contend are patently irrelevant to this FCA case. (Doc. # 33). Specifically, Defendants seek an order striking the allegations that (1) the DRX-9000 received FDA approval; (2) NASA developed the technology on which the DRX-9000 was based; and (3) Defendants have a patent or a patent pending on the DRX-9000.

---

[3] The second amended complaint shall also address the status of Relators' claims against Peer Review Network and Timothy Exarhos, particularly, whether these Defendants have been served with process or whether claims against these Defendants have been abandoned.

Defendants request that the Court strike these allegations from the first amended complaint under Rule 12(f) of the Federal Rules of Civil Procedure, which states, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" because these allegations do not relate to the submission of a false claim to the Government.

Relators, on the other hand, contend that these allegations, especially the allegations concerning FDA approval, are tied to the central allegations regarding a false claim and provide some of the detail necessary to fulfill the requirements of 9(b) of the Federal Rules of Civil Procedure.

At this early stage of the proceedings, this Court denies the motion to strike without prejudice. The allegations in question may be subject to a motion in limine in the instance that this case reaches a jury; however, these allegations are not subject to being stricken under Rule 12(f) of the Federal Rules of Civil Procedure at this point.[4]

**B.   Motion to Dismiss**

---

[4]   However, because this Court has ordered Relators to file a concise and condensed second amended complaint, this Court strongly encourages Relators to omit allegations unrelated to their complaint counts.

Defendants argue that this Court lacks jurisdiction over this case because "Relators are not the original sources of the allegations" in the first amended complaint. (Doc. # 33 at 8). Thus, Defendants seek dismissal of the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

In addition, Defendants assert that the first amended complaint does not meet the heightened pleading standards set forth in Rule 9(b) of the Federal Rules of Civil Procedure and that the first amended complaint fails to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Court has carefully evaluated the parties' arguments, and determines that this Court has jurisdiction over this matter and that repleader is necessary.

## 1. Rule 12(b)(1)

### a. Legal Standard

Motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where the jurisdictional attack is based on the face of the pleadings, the court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject

matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

However, when the jurisdictional attack is factual, courts may look outside of the four corners of the complaint to determine if jurisdiction exists. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982).[5]

In this case, Defendants attack the factual basis for this Court's jurisdiction. Accordingly, this Court may evaluate evidence outside of the four corners of the complaint to determine whether it has jurisdiction over this matter.

_____

[5] As the Eaton court explains:

The factual attack . . . differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

692 F.2d at 732 (quoting Mortensen v. First Fed. Sav. & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977)).

Defendants question this Court's jurisdiction by invoking the public disclosure bar of the FCA, 31 U.S.C. § 3730(e)(4), which provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4). "This language reflects a struggle to encourage private individuals to come forward with information about government fraud while prohibiting 'parasitic lawsuits' based on information that is already in the public domain." Brickman v. Business Loans Express, 1:05-cv-3147-JEC, 2007 U.S. Dist. LEXIS 93046, at *9 n.4 (N.D. Ga. Dec. 18, 2007)(citing Williams v. NEC Corp., 931 F.2d 1493, 1496-1497 (11th Cir. 1991)).

### b.   Public Disclosure

Defendant filed a December 2005, "Special Investigative Report" by Wendy Vogenitz, which was issued in the trade journal Anesthesia & Pain Coder's Pink Sheet, five months before Relators in this case filed suit. (Doc. # 33-3). Defendants seeks dismissal arguing that the Special

Investigative Report was a public disclosure of the allegations contained in Relators' first amended complaint.

The Eleventh Circuit uses a three part test to determine whether a public disclosure divests the court of jurisdiction. Battle v. Bd. of Regents for the State of Ga., 468 F.3d 755, 762 (11th Cir. 2006). First, the Court must determine whether the allegations or transactions asserted by the relator have been publically disclosed; if so, the Court then asks whether the publically disclosed information is the basis of the suit; and if the answer is "yes," the suit is barred unless the relator is an "original source" of the information. Id.

The Eleventh Circuit interprets "public disclosure" broadly to include information disclosed in prior lawsuits, in television news reports, in newspaper articles, and other public disseminations. McElmurray v. Consol. Gov't of Augusta-Richmond County, 501 F.3d 1244, 1253 (11th Cir. 2007). This Court determines that the detailed Special Investigative Report constitutes a public disclosure.

The Special Investigative Report specifically discusses the DRX-9000 and names James Gibson, Nicholas Exharos, and Axiom as developers of the DRX-9000. (Doc. # 33-3 at 3). The Special Investigative Report also discusses the facilitating

role of Peer Review Network. (Doc. # 33-3 at 7). Furthermore, the Special Investigative Report warns:

> Beware of medical device companies selling spinal decompression tables with the promise that Medicare and private payers will reimburse the services. At least 1,000 of the physical therapy tables are in operation nationwide. They're often sold with the assurance they can generate hundreds of thousands in annual revenue, in part from insurance reimbursement. But Medicare and most private insurers don't cover the therapy – a fact many coders and doctors don't know. So practices bill for the services anyway, using codes meant for physical therapy and in some cases, surgery. The claims they wrongly submit for payment could cost the Medicare program and private insurance companies more than $67 million this year, according to an exclusive Coder's Pink Sheet analysis.

(Doc. # 33-3 at 1).

Significantly, the Special Investigative Report comments on Relator Greg Westfall, noting among other things that "Axiom filed a $5 million breach-of-contract lawsuit against Westfall in October." (Doc. # 33-3 at 8).

While the Special Investigative Report does not specifically allege that Defendant Timothy Exarhos and Phil Fisher submitted fraudulent claims for payment in connection with billing Medicare for use of the DRX tables, the Special Investigative Report mentions Defendant Timothy Exarhos by name and contains a detailed account of how physicians submit illegal claims to Medicare in connection with the DRX tables

manufactured by Axiom Worldwide. This is sufficient to qualify as a public disclosure under the FCA.

## c. **Public Disclosure as Basis for FCA Complaint**

Having determined that at least some of the allegations in the present suit have been publically disclosed, this Court must determine whether Relators' amended complaint is "based on" the publically disclosed Special Investigative Report. The Eleventh Circuit holds that publically disclosed information, like the Special Investigative Report, is the basis of a relator's complaint if any part of the complaint is "supported by" the publically disclosed information. See Battle, 468 F.3d at 762 ("A plaintiff basing an FCA qui tam claim in any part on such publically disclosed information must demonstrate that the plaintiff is an original source of that information.") As further explained in Cooper v. Blue Cross & Blue Shield, 19 F.3d 562 (11th Cir. 1994), "The general definition of 'based on' is 'supported by.' Short of inserting the word 'solely' which would expand our jurisdiction, the language is most naturally read to preclude suits based in any part on publically disclosed information." Id. at 567 (internal citations omitted).

Based on this Court's analysis of <u>Cooper</u>, this Court determines that the present FCA suit is "based on" the Special Investigative Report.[6]  Thus, this Court must determine whether Relators were the "original source" of the information contained in their amended complaint.

### d.  <u>Original Source</u>

An "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

The <u>Cooper</u> case contains an instructive analysis of the "original source" doctrine.  In <u>Cooper</u>, the relator, an employee of the United States Census Bureau, qualified for both Medicare and the Federal Employees Health Benefits

---

[6]  The court in <u>Cooper</u> remarked: "The Tenth Circuit concluded the 'based upon' test was to be a 'quick trigger to get to the more exacting original source inquiry.'  We agree. The original source exception was intended to ensure that qui tam actions based solely on public disclosures could not be brought by individuals that had no direct or independent knowledge of the information, or those who were not an original source to the entity that disclosed the fraud." <u>Cooper</u>, 19 F.3d at 568 n.10 (citations and quotations omitted)(citing <u>Precision v. Koch Indus.</u>, 971 F.2d 548, 552 (10th Cir. 1992).

Program, which was administered by Blue Cross and Blue Shield of Florida ("BCBSF"). Cooper, 19 F.3d at 564. Cooper and his wife submitted medical bills to BCBSF for payment, and BCBSF returned their claims with the instruction that "Medicare must pay first." Id. "As a result, Medicare and BCBSF shuffled his claims back and forth before Cooper or his physicians were paid." Id.

Cooper conducted research regarding his benefits and "the law governing payment of his claims" for three years. Id. Cooper then asked Congress and the Health Care Financing Administration ("HCFA") to help him. Id. Shortly thereafter, Congress held a hearing on industry-wide fraud where it was officially disclosed that BCBSF was under investigation for fraud. Id. at 567. Five weeks after the Congressional hearing, Cooper filed a qui tam FCA suit against BCBS. Id. at 568.

The district court granted a Rule 12(b)(1) motion to dismiss Cooper's case, finding that Cooper was not the original source of the information about BCBSF's alleged fraud. Id. at 564. The Eleventh Circuit reversed and determined that Cooper qualified as an original source of the information. The Eleventh Circuit explained:

> The record shows that Cooper acquired his knowledge
> of BCBSF's alleged wrongdoing through three years
> of his own claims processing, research, and
> correspondence with members of Congress and HCFA.
> Three weeks before the hearing in which an OIG
> inspector announced it was investigating BCBSF at
> HCFA's request, Cooper had asked HCFA to act
> against BCBSF. Thus, his knowledge was direct.
> And it was obtained independently of the
> allegations disclosed at the hearing. That he
> filed suit shortly after the hearing does not
> change this circumstance. See Prudential, 944 F.2d
> at 1160 (it is not necessary for relator to have
> all relevant information to qualify as
> 'independent'); see also 1990 Implementation
> Hearing, at 3 ("Because of original source
> exception, a party with knowledge of fraud against
> [the] Government should be able to maintain a qui
> tam action as long as he had some of the
> information in advance of the public
> disclosure."(Statement of Sen. Grassley).

Cooper, 19 F.3d at 568.

In the present case, Relators worked for Defendants for several years prior to the publication of the Special Investigative Report. Relators are akin to Cooper in as much as Relators personally observed Defendants' conduct for at least three years prior to any public disclosure concerning the conduct in question. Furthermore, Relator Greg Westfall asserts in the amended complaint that he "is the primary source" of any public disclosure about Defendants' alleged fraud and that he "has direct, personal, and independent knowledge of the substance and essence" of the complaint allegations. (Doc. # 25 at ¶ 5).

Relators are no strangers to Axiom Worldwide, James Gibson, Nicholas Exarhos, and Timothy Exarhos. Rather, Relators were employees of these Defendants and were privy to confidential information about their practices. As this Court learned earlier in this case in proceedings regarding a motion to seal, Relators were entrusted with confidential information regarding Axiom, including Axiom's customer list and training manual. (Doc. # 64, 65). The record also reflects that Axiom Worldwide sued Relator Greg Westfall in state court alleging that Westfall improperly disclosed Axiom Worldwide's confidential information. (Doc. # 49).

Thus, at this stage of the proceedings, this Court determines that Relators qualify as "original sources" of the information contained in the amended complaint and that this Court has jurisdiction over this matter.[7]

### 2.   Rules 9(b) and 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." However, Rule 9(b)

---

[7]  As will be discussed below, this Court requires that Relators file a second amended complaint. Should allegations in the second amended complaint call this Court's jurisdiction into question, this Court will re-evaluate its determination regarding jurisdiction.

of the Federal Rules of Civil Procedure places more stringent pleading requirements on cases alleging fraud, such as the present one. <u>Clausen v. Lab. Corp. of America, Inc.</u>, 290 F. 3d 1301 (11th Cir. 2002). Rule 9(b) is satisfied only if the complaint sets forth: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [the] same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." <u>Ziemba v. Cascade Int'l, Inc.</u>, 256 F.3d 1194, 1202 (11th Cir. 2001).

Furthermore, the Eleventh Circuit has recently commented in a similar FCA case:

> Rule 9(b) requires 'some indicia of reliability in the complaint to support allegations of an *actual false claim* for payment being made to the Government.' Plaintiffs need not prove their allegations in the complaint but must provide particular facts so the Court is not left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit.

<u>Mitchell v. Beverly Enterprises, Inc.</u>, 248 F. App'x 73, 74-75 (11th Cir. 2007)(citing <u>Clausen</u>, 290 F.3d at 1311)(emphasis in original).

The FCA permits private persons to file qui tam actions on behalf of the United States against any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; or (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

31 U.S.C. § 3729(a)(1)-(2). Under the FCA, "knowingly" means a person who "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). Furthermore, a "claim" under the FCA is "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested." 31 U.S.C. § 3729(c).

Thus, to succeed on a FCA claim, a relator must prove: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant[s] to the United States for payment or approval; (3) with knowledge that the claim was false." Walker v. R&F Props. of Lake City, Inc., 433 F.3d 1349, 1355 (11th Cir. 2005).

The sine qua non of any FCA case is the submission of a false claim for payment to the Government. Relators, insiders of Axiom Worldwide, contend that two specific physicians (Defendant Timothy Exarhos and Phil Fisher) submitted fraudulent claims for payment in connection with billing Medicare for use of the DRX tables. These complaint allegations are not an example of clarity, but they exist, and it would be inappropriate to dismiss this case with prejudice in light of these core allegations.

The first amended complaint mentions many other physicians, particularly Dr. Zelliger and Dr. Fowler; however, Relators fail to allege that these physicians actually submitted a false claim for payment to Medicare. The first amended complaint seems to imply as much, but it does not come forth and make the allegation. The same mystery shrouds the hundreds of physicians listed in Exhibit B to the fist amended complaint. As articulated by Defendants, "Relators merely appear to have identified physicians in Exhibit B who have purchased a DRX, and assumed for purposes of the FAC that those physicians each submitted hundreds of claims bearing CPT codes 97140 or 97530." (Doc. # 33 at 17).

Approximately 45 pages of the 49-page complaint contains vague allegations that are not related to the submission of a

false claim to the Government. Nevertheless, like a diamond in the rough, a few paragraphs of the first amended complaint appear to allege the submission of at least one false claim for payment to the Government. Under these circumstances, this Court determines that repleader, rather than dismissal, is appropriate. <u>See</u> Rule 12(e), Fed.R.Civ.P.

The Eleventh Circuit noted in <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1132-1133 (11th Cir. 2001), "The importance of using the Rules to uncover bogus claims and defenses, thereby reducing the parties' dispute to its bare essentials, cannot be overemphasized." The court further explained that "if, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, must intervene sua sponte and order a repleader." <u>Id.</u>

To narrow the issues in this case and separate the wheat from the chaff, the Court orders Relators to file a second amended complaint, limited to fifteen pages, within ten days of the date of this Order. The second amended complaint shall be organized into specific counts and shall, as to each count: (1) identify specific false claims for payment or specific false statements made in order to get a false claim paid by the Government; (2) if a false statement is alleged, connect

that statement to a specific claim for payment and state who made the statement to whom and when; and (3) state why those claims or statements were false. As for the conspiracy allegations, Relators should specifically identify the alleged co-conspirators and describe the alleged agreement to defraud the Government.

If Relators fail to comply with this Court's Order and with the basic requirements of Rule 9(b) of the Federal Rules of Civil Procedure, this Court will be inclined to dismiss this case with prejudice.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Axiom Worldwide, Inc., Axiom Worldwide, LLC, James J. Gibson, Jr., and Nicholas Exarhos, DC's Motion to Dismiss (Doc. # 33) is **GRANTED IN PART**.

(2) Defendants Axiom Worldwide, Inc., Axiom Worldwide, LLC, James J. Gibson, Jr., and Nicholas Exarhos, DC's Motion to Strike (Doc. # 34) is **DENIED WITHOUT PREJUDICE.**

(3) The first amended complaint (Doc. # 25) is dismissed without prejudice. Relators shall file an amended complaint as specified herein, limited to fifteen pages, within ten days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>20th</u> day of March, 2009.

<u>Virginia M. Hernandez Covington</u>
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record