UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA ex rel.,
GREG WESTFALL and SUZANNE WESTFALL,

    Plaintiffs,

v.
                        Case No. 8:06-cv-571-T-33TBM

AXIOM WORLDWIDE, INC., AXIOM WORLDWIDE, LLC, JAMES J. GIBSON, JR., NICHOLAS EXARHOS, TIMOTHY EXARHOS, PEER REVIEW NETWORK, INC.,

    Defendants.
_____/

**<u>ORDER</u>**

This cause is before the Court pursuant to Defendants Axiom Worldwide, Inc., Axiom Worldwide, LLC, James J. Gibson, Jr., and Nicholas Exarhos' Motion to Dismiss Relators' Second Amended Complaint with Prejudice (Doc. # 81), which was filed on April 22, 2009. On May 6, 2009, Relators Greg and Suzanne Westfall filed their Response in Opposition to the Motion to Dismiss. (Doc. # 82). For the reasons that follow, this Court will grant Defendants' motion to dismiss.

**I.**   **<u>Factual Background</u>**[1]

Defendants Axiom Worldwide, Inc. and Axiom Worldwide, LLC (collectively "Axiom Worldwide") are business entities

---

[1] The factual allegations are taken from the second amended complaint (Doc. # 77) and are accepted as true for the purpose of deciding Defendants' motion to dismiss.

developed by Defendants James Gibson, Nicholas Exarhos, and Timothy Exarhos to market, promote, and sell DRX spinal decompression devices to healthcare professionals.  The DRX devices are high-tech tables used by physicians to ease neck and back pain. (Doc. # 77 at ¶ 12).

Relators allege that the DRX devices were "mechanical traction devices" and that "Defendants devised a sales scheme to promote the sale of their DRX-9000 (and related devices) by knowingly, falsely, and fraudulently causing physicians to submit claims for payment to Medicare and other federal healthcare programs for services rendered with the DRX devices (and related devices) by use of their billing scheme." (Id.)

Relators describe the alleged "billing scheme:"

> Traction devices are similar to the DRX device and are billed under Medicare for approximately fifteen dollars ($15) per session [under mechanical traction CPT Code 97012 or an unlisted code]. Axiom [Worldwide] falsely and fraudulently markets and promotes its device as one to be billed in a manner devised by Defendants Gibson, Nicholas and Timothy Exarhos and PRN for approximately one hundred and fifty-six dollars ($156) per session for multiple procedures as physical therapy type services; such as, Manual Therapy/Joint Mobilization (CPT Code 97140) and/or Therapeutic/Kinetic Activities (CPT Code 97530), instead of mechanical traction or an unlisted procedure which in truth and fact is what it should be billed as.

(Id.)

Relator Greg Westfall was a sales representative and sales manager for Axiom Worldwide and Relator Suzanne Westfall served as Greg Westfall's assistant. (Id. at ¶ 3).

While employed at Axiom Worldwide, Relators concluded that the DRX tables were being sold to physicians under the scheme described above. Particularly, Relators claim that Defendants "devised a sales scheme and program using false and fraudulent and misleading representations to physicians which they knew would cause physicians to submit false and fraudulent claims to the Medicare and other Federal Program Officials in order for the physicians to obtain the higher reimbursements of approximately $156 per patient session." (Id. at ¶ 14).

## II. **Relators' Complaint and Procedural History**

On April 5, 2006, Relators filed a sealed complaint against Defendants under the False Claims Act, 31 U.S.C. § 3729 (the "FCA"). (Doc. # 1). On August 3, 2007, the United States declined to intervene in this suit. (Doc. # 2). On February 19, 2008, Defendant Axiom Worldwide, Inc. filed a motion to dismiss the complaint with prejudice pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. # 15), arguing, among other things, that

Axiom Worldwide, Inc. never submitted any claims to Medicare, or any other Government agency, for reimbursement.

On February 20, 2008, Relators filed a motion to amend the complaint, which was granted. (Doc. ## 16, 22). On March 31, 2008, Relators filed the first amended complaint, mooting the initial motion to dismiss the complaint. (Doc. # 27). On June 10, 2008, Defendants again sought dismissal of the case, asserting that the amended complaint was "an unfocused, meandering, and virtually incomprehensible pleading that consists of errant and disjointed allegations." (Doc. ## 33, 63 at 3). On March 20, 2009, this Court dismissed the first amended complaint without prejudice, noting: "Reading the first amended complaint carefully, this Court was not able to connect with any certainty the numerous allegations with the individual Defendants." (Doc. # 70 at 9). In the Order, the Court directed the Relators to:

> [F]ile a second amended complaint, limited to fifteen pages, within ten days of the date of this Order. The second amended complaint shall be organized into specific counts and shall, as to each count: (1) identify specific false claims for payment or specific false statements made in order to get a false claim paid by the Government; (2) if a false statement is alleged, connect that statement to a specific claim for payment and state who made the statement to whom and when; and (3) state why those claims or statements were false. As for the conspiracy allegations, Relators should specifically identify the alleged co-conspirators

>       and describe the alleged agreement to defraud the
>       Government.
>            If Relators fail to comply with this Court's
>       Order and with the basic requirements of Rule 9(b)
>       of the Federal Rules of Civil Procedure, this Court
>       will be inclined to dismiss this case with
>       prejudice.

(Doc. # 70 at 25-26).

On April 6, 2009, Relators filed a second amended complaint containing nineteen counts. (Doc. # 77). Counts one through four are asserted against each Defendant and allege that the Defendants collectively submitted false claims for payment to Medicare and other Government programs through Defendant Timothy Exarhos' medical practice. (Id. at ¶¶ 23-24). Counts five through eight are also asserted against each Defendant and allege that Defendants collectively created and used false records to get claims paid by the Government through Defendant Timothy Exarhos' medical practice. (Id. at ¶¶ 25-26). Akin to counts one through eight, counts nine through eighteen are asserted against each Defendant and allege that Defendants collectively caused false claims to be presented to the Government for payment through James Staheli's medical practice. (Id. at ¶¶ 27-30). In count nineteen, Relators allege that Defendants conspired "to defraud the Government of the United States, in particular the Medicare and other government healthcare programs, by getting

false and fraudulent claims allowed and paid in the amount of multi-millions of dollars so that the Defendants could sell their DRX devices." (Id. at ¶¶ 31-34).

By their present motion to dismiss, Defendants argue that Relators failed to comply with Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure as well as with the directives set forth in this Court's Order of dismissal.

### III. **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

**IV. Motion to Dismiss with Prejudice**

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." However, Rule 9(b) of the Federal Rules of Civil Procedure places more stringent pleading requirements on cases alleging fraud, such as the present one. Clausen v. Lab. Corp. of Am., Inc., 290 F. 3d 1301, 1305 (11th Cir. 2002). Rule 9(b) is satisfied only if the complaint sets forth: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [the] same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).

Furthermore, the Eleventh Circuit recently held in a similar FCA case:

-7-

> Rule 9(b) requires 'some indicia of reliability in the complaint to support allegations of an *actual false claim* for payment being made to the Government.' Plaintiffs need not prove their allegations in the complaint but must provide particular facts so the Court is not left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit.

Mitchell v. Beverly Enters., Inc., 248 F. App'x 73, 74-75 (11th Cir. 2007)(citing Clausen, 290 F.3d at 1311)(emphasis in original).

The FCA permits private persons to file *qui tam* actions on behalf of the United States against any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; or (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

31 U.S.C. § 3729(a).

Under the FCA, a person acts "knowingly" when he "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). Furthermore, a "claim" under the FCA is "any request or demand, whether under a contract or otherwise, for money or property which is made to

-8-

a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested." 31 U.S.C. § 3729(c).

Thus, to succeed on an FCA claim, a relator must prove: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant[s] to the United States for payment or approval; (3) with knowledge that the claim was false." Walker v. R&F Props. of Lake City, Inc., 433 F.3d 1349, 1355 (11th Cir. 2005).

The statute provides for a "civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . ." 31 U.S.C. § 3729(a). This bounty provision encourages litigation. As stated by the Supreme Court, *qui tam* suits "are motivated primarily by prospects of monetary reward, rather than public good" and "raise a high risk of abusive litigation." Hughes Aircraft Co. v. Schumer, 520 U.S. 939, 949 (1997); Twombly, 550 U.S. 544, 569 n. 14 (2007).

The *sine qua non* of any FCA case is the submission of a false claim for payment to the Government. Relators, insiders of Axiom Worldwide, generally contend that two specific physicians (Defendant Dr. Timothy Exarhos and non-party Dr.

James Staheli) submitted fraudulent claims for payment in connection with billing Medicare and other federal programs for use of the DRX devices. In an abundance of caution and fairness, this Court allowed Relators to amend their complaint to comply with Rule 9(b) as to these bare allegations. Though given ample opportunity, Relators failed to comply with Rule 9(b) and this Court's Order.

Specifically, this Court finds that counts one through eighteen (alleging the submission of false claims to the Government and creation of false records to get a false claim paid under 31 U.S.C. § 3729(a)) lack the necessary indicia of reliability to survive Defendants' motion to dismiss. Relators identified four claims reflecting CPT code 97530 allegedly billed to Medicare by Dr. Timothy Exarhos and eight claims reflecting CPT codes 97530 or 97140 allegedly billed to Medicare by Dr. Staheli. These allegations cannot support an FCA action and are not reliable because Relators do not allege what services were actually rendered by Dr. Timothy Exarhos and Dr. Staheli. As argued by Defendants, "Because Relators neither worked . . . in either Timothy Exarhos' or Dr. Staheli's medical practices, they do not have firsthand knowledge about the services rendered to the patients, who, likewise, are not known to Relators." (Doc. # 81 at 10).

Even if this Court were to take judicial notice, as requested by Relators, of the CPT codes and their meanings, this Court could not allow counts one through four and counts nine through eighteen to stand. This is because Relators have provided no reliable basis to support the allegations that claims submitted by these physicians were false.[2] The two physicians identified (Dr. Timothy Exarhos and Dr. Staheli) may have owned a DRX table, but this Court cannot conclude that these physicians were submitting false claims to Medicare simply because they owned a certain device and billed Medicare under various CPT codes. Furthermore, Relators do not have firsthand knowledge to support the allegation that any claims in question were actually submitted to Medicare or any other federal healthcare program.

The same analysis applies with equal force to counts five through eight, which concern false records. The breadth of the allegations concerning false records is of particular concern to this Court. Relators contend, "[o]n information and belief" that:

---

[2] This Court also agrees with Defendants that "the [complaint] heading pertaining to counts 1 through 4 conveys the impression that the counts are against Timothy Exarhos only." (Doc. # 81 at 6). Relators fail to explain how the other Defendants were involved in the alleged submission of false claims to Medicare.

> [N]umerous thousands of other false and fraudulent records and statements were made and used and caused to be made and used to get false and fraudulent claims paid and approved by the government health care programs including but not limited to the Medicare program through Defendant Dr. Timothy Exarhos' medical practice by each of the Defendants herein and these will be determined upon discovery.

(Doc. # 77 at 11). This vague allegation cannot carry the day in an FCA case concerning false records.[3]

In conducting its analysis, this Court finds instructive Atkins v. McInteer, 470 F.3d 1350 (11th Cir. 2006). In Atkins, the relator alleged that defendants created an elaborate scheme for defrauding the Government through the submission of false claims to Medicare. Even though the complaint listed particular patients, dates, and corresponding medical codes, the Eleventh Circuit held that the relator failed to provide the nexus "showing that the defendants actually submitted reimbursement claims for the services." Id. at 1359.

The Eleventh Circuit further held that the FCA does not allow a plaintiff "merely to describe a private scheme in

---

[3] See, e.g., Rafizadeh v. Cont'l Common, Inc., 553 F.3d 869, 874 (5th Cir. 2008)("Despite the fact that § 3729(a)(2) does not require presentment, a relator alleging a § 3729(a)(2) violation must still show the who, what, when, and how of the alleged fraud under Rule 9(b). Rafidazeh has failed to meet several of the Rule 9(b) requirements: what statements were in the budget, who prepared it, and how it was used to get government funds.")

detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." Id. at 1357 (citing Clausen, 290 F.3d at 1311). Finally, the Eleventh Circuit determined that the relator summarily concluded, without specifically alleging, that the defendants submitted false claims to the Government for reimbursement, and accordingly, the Eleventh Circuit affirmed the dismissal of the case with prejudice. Id. at 1355.

The holding in Atkins is in sharp contrast to that in Hill v. Morehouse Med. Assoc., Inc., 82 Fed App'x 213, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) (unpublished). In Hill, the Eleventh Circuit reversed the dismissal of a FCA complaint, finding that a former medical billing and coding employee satisfied Rule 9(b)'s particularity requirement when she claimed in her complaint that she had firsthand knowledge that her employer submitted false claims. Id. at *5. In Hill, the relator worked for seven months in the department responsible for claims submission. Id. at *4.

Here, Relators are akin to those from Atkins. Though they were employees of Axiom Worldwide, they allege that Dr. Timothy Exarhos and Dr. Staheli submitted false claims to the

Government. Relators never worked in the offices of these physicians, nor did they witness these physicians submitting false claims. Relators' second amended complaint fails to allege false claims and false records with the level of specificity required by Rule 9(b). Accordingly, this Court dismisses counts one through eighteen.

This Court similarly dismisses count nineteen, containing Relator's conspiracy allegations. Relators' bare boned conspiracy count alleges that Defendants:

> Did combine, conspire, and agree together and with each other to defraud the Government of the United States, in particular the Medicare and other government healthcare programs, by getting false and fraudulent claims allowed and paid in the amount of multi-millions of dollars so that the Defendants could sell their DRX devices. Said Defendants combined, conspired and agreed together and with each other and others unknown and uncharged herein, to commit the acts and omissions cited in this complaint.

(Doc. # 77 at ¶ 31).

As overt acts, in addition to those listed in the complaint, Relators allege that Defendant Nicholas Exarhos sold Dr. Fisher a DRX device and that he "instructed by fax, Dr. Staheli . . . to use the fraudulent billing scheme codes, all of which he knew to be false and fraudulent." (Id. at ¶¶ 32-34).

The second amended complaint fails to comply with this Court's Order (Doc. # 70 at 25) because it "does not describe the alleged agreement to defraud the Government." (Doc. # 81 at 15). Further, it does not refer to any particular communication between or among the alleged co-conspirators that demonstrates any agreement to defraud the Government. There is no allegation concerning where or when the agreement was reached. The allegations concerning a conspiracy (lacking specific allegations regarding the entry of an agreement or overt acts) are merely legal conclusions masquerading as factual allegations, which do not survive the motion to dismiss. See Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005).

This Court presumes, as with the other counts, that Relators intend to uncover the basis for their conspiracy claim through discovery, which is impermissible.

## V. Conclusion

The stringent standards imposed by Rule 9(b) safeguard a defendant's reputation from the injury which can result from fraud allegations. See Durham v. Business Mgmt. Assoc., 847 F.2d 1505, 1511 (11th Cir. 1988). Rule 9(b)'s requirements also rebuff "fraud actions in which all of the facts are learned through discovery after the complaint is filed."

Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir. 1985); Clausen, 290 F.3d 1313 n.24 ("When a plaintiff does not specifically plead the minimum elements of their allegations, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements.")

As the Eleventh Circuit held in Atkins:

> The particularly requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim. . . . If given such a ticket, the next stage of the litigation is clear. The Plaintiff will request production of every claim submitted by the Defendant during the time period corresponding to Plaintiff's claims. At that point, the Defendant may decide to settle the case to avoid the enormous cost of such discovery and the possible disruption of its ongoing business. On the other hand, the Defendant may choose to resist the discovery. In that case, the Court will be presented with the dilemma of allowing an unlimited fishing expedition or no discovery at all because of the difficulty in fashioning logical and principled limits on what has to be produced. The particularity requirement of Rule 9(b), if enforced, will not only protect defendants against strike suits, but will result in claims with discernable boundaries and manageable discovery limits.

Id. at 1359-1360 (citations omitted).

This Court roundly refuses to open the door to discovery and litigation when, after three attempts, Relators failed to file

a complaint in compliance with Rule 9(b) of the Federal Rules of Civil Procedure. Thus, upon due consideration, this Court dismisses this case with prejudice.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Axiom Worldwide, Inc., Axiom Worldwide, LLC, James J. Gibson, Jr., and Nicholas Exarhos' Motion to Dismiss (Doc. # 81) is **GRANTED.**

(2) This case is **DISMISSED WITH PREJUDICE.** The Clerk is directed to terminate all pending motions and **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 20th day of May, 2009.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record